UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EILEEN CASINO and DONATO CASINO,

                     Plaintiffs,

          -against-

BRIAN CASSIDY, STONYBROOK [sic] UNIV.
HOSPITAL, WOODMERE NURSING HOME,
ANY OTHER FUTURE AGENT OF ANY KIND, and
NEW YORK STATE MENTAL HEALTH COURT,

                     Defendants.
----------------------------------------------------------X

**ORDER**
14-CV-00629 (SJF)(GRB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ APR 1 0 2014 ★

LONG ISLAND OFFICE

FEUERSTEIN, District Judge:

On January 22, 2014, *pro se* plaintiff Eileen Casino ("plaintiff")[1] filed: (1) a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants Brian Cassidy ("Cassidy"), Stony Brook University Hospital ("Stony Brook"), Woodmere Nursing Home ("Woodmere"), "any other future agent of any kind" and the New York State Mental Health Court ("the State Court"), seeking to assert claims on behalf of herself and Donato Casino ("Mr. Casino") concerning, *inter alia*, (a) the treatment and care of Mr. Casino at Stony Brook and Woodmere; and (b) court proceedings in which defendant Brian Cassidy ("Cassidy") acted as Mr. Casino's law guardian; and (2) an application to proceed *in forma pauperis*. Since plaintiff's financial status, as set forth in her declaration in support of her application to proceed *in forma pauperis*, qualifies her to commence this action without prepayment of the filing fees, see 28 U.S.C. § 1915(a)(1), her

---

[1] The handwritten complaint and *in forma pauperis* application are signed only by Eileen Casino. (Complaint ["Compl."] at 4). Although the caption indicates that Donato Casino "cannot use hand to sign but does want to live" (*Id.* at 1), it is well-established that "[a] person who has not been admitted to the practice of law may not represent anybody other than himself." Guest v. Hansen, 603 F.3d 15, 20 (2d Cir. 2010); see 28 U.S.C. § 1654. Accordingly, any claims asserted by Eileen Casino on behalf of Donato Casino are dismissed without prejudice.

application to proceed *in forma pauperis* is granted. However, for the reasons set forth below, the Complaint is *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

I.     Prior Litigation

   A.     The First Casino Action

On September 11, 2013, plaintiff filed in this Court, *inter alia*, a complaint pursuant to Section 1983 against Cassidy, "Mr. Rohl, as owner/admin,"[2] "Suffolk County Employees of Court," "N.Y. State Court Employees," and a judge of the "N.Y. State M.H. Court," among others, alleging violations of Mr. Casino's civil rights relating to his treatment and care in an unidentified nursing home and to court proceedings in which Cassidy acted as his law guardian, which was assigned docket number 13-cv-5095 ("the first action"). By Order dated November 8, 2013, *inter alia*: (1) plaintiff's claims in the first action were *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) for lack of standing and failure to state a claim for relief; and (2) Mr. Casino's claims in the first action were *sua sponte* dismissed without prejudice on the basis that plaintiff, who is not an attorney, could not assert *pro se* claims on his behalf.

   B.     The Second Complaint

On October 28, 2013, plaintiff filed, *inter alia*, another complaint in this court pursuant to Section 1983 against Stony Brook, Cassidy and Woodhaven Nursing Home alleging, *inter alia*, that

---

[2] In her application to proceed *in forma pauperis* in a second action commenced by plaintiff, she identifies Mr. Rohl as the "owner/administrator" of Woodhaven Nursing Home.

the defendants therein were "not always acting in the best interest of [Mr.] Casino or his family or according to all our wishes" and "unfair competition for family time with my husband," (Compl. under docket number 13-cv-6357 at 1-2), which was assigned docket number 13-cv-6357 ("the second action"). By Order dated January 27, 2014 (the "January Order"), *inter alia*: (1) plaintiff's claims against Stony Brook were *sua sponte* dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction; (2) plaintiff's Section 1983 claims against Woodhaven and Cassidy were *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief; and (3) any state law claims were dismissed without prejudice pursuant to 28 U.S.C. § 1367.

II.     The Instant Action[3]

On or about January 22, 2014, plaintiff filed the instant complaint alleging:

> "[At Stony Brook on] 12/21/13 I found Dan with purple blotchy face working hard at breathing while on resp. – no resp. to call bell. . . . When I stated that there was a pending court matter against Dan's law guardian and if there is complicity in deliberate failure of response to crisis for a virtual DNR then there would be a wrongful death suit. Also if you get compliance from Brian [Cassidy]– get his signature – then there was rapid response. I couldn't believe it- after so many mos. of reasonable comfort on unit 9 this happened there.
>
> [On] January 17, 2014, 3-4 pm = arr. 6 pm Woodmere [Nursing] Home in Nassau County. Stonybrook was notified by myself of pending NY State Court Conference about Brian [Cassidy] [and] a request for a restraining order submitted to Fed Court– in spite of this Stony Brook transferred [Mr. Casino] to Woodmere [Nursing] Home in spite of bacterial pneumonia [and] red face, difficulty breathing. Ask Woodmere how long before Dan was conscious for on [arrival].

---

[3] All material allegations in the Complaint are assumed to be true for the purposes of this order, see, e.g. Rogers v. City of Troy, New York, 148 F.3d 52, 58 (2d Cir. 1998) (in reviewing a *pro se* complaint for *sua sponte* dismissal, a court is required to accept the material allegations in the complaint as true), and do not constitute findings of fact by the Court.

Both times, compliance against best interest [and] wish of pt [and] family resulting in setbacks of health at Stonybrook [sic] Hospital between 9/13 & 1/14. These people should pay cost of recovery [and] amenities as T.V. [and] phone to help him feel comfortable [and] focused [and] cared for at Woodmere."

(Compl. ¶¶ III, IV). Plaintiff seeks: (1) an order directing defendants to "turn over all monies which should be rightfully returned to Dan's personal acct. at his address for pain [and] suffering over neglect [and] money ret'd which was paid for care not given on both occasions aforementioned," (*Id.* at ¶ V); (2) an "emergency restraining order to prevent any deliberat [sic] action or neglect leading to serious setback or espiacialy [sic] leading to death (i.e. neglect to get help or 'pulling plug') for any reason by anyone," (*Id.*); and (3) to hold Cassidy "responsible to sue in small claims for return of money from Medicaid [and] Medicare which was pd. for malpractice." (*Id.*)

III. Discussion

    A. Subject Matter Jurisdiction

        1. Standard of Review

Federal courts are courts of limited jurisdiction, see Gunn v. Minton, — U.S. —, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013); Mims v. Arrow Financial Services, LLC, — U.S. —, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (holding that federal courts may not exercise jurisdiction absent a statutory basis); Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (holding that federal courts "possess only that power authorized by Constitution and statute * * *.") Lack of subject matter jurisdiction cannot be waived or forfeited

and may be raised at any time by a party or by the court *sua sponte*. See Gonzalez v. Thaler, — U.S. —, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012); see also Sebelius v. Auburn Regional Medical Center, — U.S. —, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."). If a court lacks subject matter jurisdiction, it must dismiss the action. See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); Fracasse v. People's United Bank, — F.3d —, 2014 WL 1243811, at * 2 (2d Cir. Mar. 27, 2014); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

2. Eleventh Amendment Immunity

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." Coleman v. Court of Appeals of Maryland, — U.S. —, 132 S. Ct. 1327, 1333, 182 L. Ed. 2d 296 (2012). Absent consent, the Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a State or one of its agencies. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (quotations and citation omitted)); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.") "Sovereign immunity principles enforce an important constitutional limitation on the power of the federal

courts." Sossamon v. Texas, — U.S.—, 131 S. Ct. 1651, 1657, 179 L. Ed. 2d 700 (2011); see also Pennhurst State, 465 U.S. at 98, 104 S. Ct. 900 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III[.]")

A State's consent to suit must be "unequivocally expressed," Pennhurst State, 465 U.S. at 99, 104 S. Ct. 900, and "may not be implied." Sossamon, — U.S.—, 131 S. Ct. at 1658. "Generally, [courts] will find a waiver either if the State voluntarily invokes [federal court] jurisdiction * * *, or else if the State makes a clear declaration that it intends to submit itself to [federal court] jurisdiction * * *." College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (quotations and citations omitted).

Although the Eleventh Amendment generally does not bar suits against state officials acting in their official capacity seeking prospective relief, *i.e.*, to enjoin conduct that violates the federal Constitution, see Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908); Conyers v. Rossides, 558 F.3d 137, 150 (2d Cir. 2009), cert. denied by Conyers v. Pistole, 133 S. Ct. 329, 184 L. Ed. 2d 241 (2012), that exception to Eleventh Amendment immunity is inapplicable to suits against the States and their agencies, which are barred regardless of the relief sought. Puerto Rico Aqueduct, 506 U.S. at 146, 113 S.Ct. 684; see also Pennhurst State, 465 U.S. at 100-01, 104 S. Ct. 900 (holding that the Eleventh Amendment's "jurisdictional bar applies [to claims against the State or one of its agencies or departments] regardless of the nature of the relief sought."); Palmer v. New York State Office of Court Admin., 526 F. App'x 97, 99 (2d Cir. May 7, 2013) (summary order) (holding that the plaintiff was required to name a state official acting in his or her official capacity as a defendant "in order to attempt to avail herself of the exception to Eleventh Amendment immunity under Ex parte Young, 209 U.S. 123, 28 S. Ct. 441 * * *.")

Moreover, "[a]s an exception to this principle [of Eleventh Amendment sovereign immunity], Congress may abrogate the States' immunity from suit pursuant to its powers under Section 5 of the Fourteenth Amendment." Coleman, — U.S. —, 132 S. Ct. at 1333; see also United States v. Georgia, 546 U.S. 151, 154, 158-59, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). "Congress must make its intention to abrogate unmistakably clear in the language of the statute." Coleman, — U.S. —, 132 S. Ct. at 1333 (quotations, brackets and citation omitted). "[I]t is well settled that 42 U.S.C. § 1983 does not constitute an exercise of [Congress's] authority [to abrogate States' sovereign immunity]." Dube v. State University of New York, 900 F.2d 587, 594 (2d Cir. 1990); see also Quern v. Jordan, 440 U.S. 332, 342, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (holding that Section 1983 did not abrogate the States' Eleventh Amendment immunity).

As the Court made clear in the January Order in the second action, Stony Brook is part of the State University of New York ("SUNY"). "For Eleventh Amendment purposes, SUNY is an integral part of the government of the State of New York and when it is sued the State is the real party." Dube, 900 F.2d at 594 (quotation marks, brackets and citation omitted); see also Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (accord). Thus, absent any indication that Stony Brook has waived its sovereign immunity, plaintiff's claims against it, whether legal or equitable, are proscribed by the Eleventh Amendment. See, e.g. Gasparik v. Stony Brook University, 296 F. App'x 151, 152 (2d Cir. Oct. 16, 2008) (summary order) (finding that the district court properly concluded that it lacked subject matter jurisdiction over the plaintiff's Section 1983 claims against Stony Brook University "because SUNY has not consented to be sued in a federal forum and so is immune from suit pursuant to the Eleventh Amendment."); Fariello v. Rodriguez, 148 F.R.D. 670, 681 (E.D.N.Y. 1993), aff'd, 22 F.3d 1090 (2d Cir. 1994) ("[T]he Stony Brook

University Hospital is an entity of the State of New York and * * * under the provisions of the Eleventh Amendment to the Constitution, this action is barred in federal court."); Walters v. Suffolk County, No. 09-cv-0556, 2009 WL 1605415, at * 3 (E.D.N.Y. June 4, 2009) (dismissing Section 1983 claims against the State University of New York's Stony Brook Medical Center as barred by the Eleventh Amendment). Accordingly, plaintiff's claims against Stony Brook are *sua sponte* dismissed pursuant to Rule 12(h) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

Similarly, plaintiff's claims against the State Court are barred by the Eleventh Amendment. The State Court is an arm of the State of New York, see N.Y. Const. art. 6, § 1 (creating the Unified Court System); Monreal v. New York, 518 F. App'x 11, 12 (2d Cir. Apr. 29, 2013) (summary order) ("Every state entity sued by [the plaintiff] [including the "Judicial Systems" of the State of New York] is an arm of the state that is entitled to sovereign immunity."); McCluskey v. New York State Unified Court System, 442 F. App'x 586, 588 (2d Cir. Sept. 7, 2011) (summary order) ("[T]he claims against the Unified Court System are barred by the Eleventh Amendment since it is an arm of the State of New York."); McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 122-23 (2d Cir. May 18, 2010) (summary order) (noting that state courts, as "arms of the State are immunized from suit.") (internal quotation marks and citation omitted)), and, as such, is immune from suit in this Court under the Eleventh Amendment. See, e.g., Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (the New York State Unified Court System is an arm of the State, and therefore protected by Eleventh Amendment immunity). Accordingly, plaintiff's claims against the State Court are likewise *sua sponte* dismissed pursuant to Rule 12(h) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

B.  28 U.S.C. § 1915

Under the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.

It is axiomatic that district courts are required to read *pro se* complaints liberally, Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013), and to construe them "'to raise the strongest arguments that they suggest." Gerstenbluth v. Credit Suisse Securities (USA) LLC, 728 F.3d 139, 142-43 (2d Cir. 2013) (quotations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." Harrington v. County of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010); see also Ashcroft v. Iqbal 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson, 551 U.S. 89, 127 S. Ct. 2197 (quotations and citation omitted); see also Anderson News, LLC v. American Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012), cert. denied by Curtis Circulation Co. v. Anderson News, LLC, --- U.S. ----, 133 S. Ct. 846, 184 L. Ed. 2d 655 (2013) (accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft, 556 U.S. at 678, 129 S. Ct. 1937 (quoting Twombly, 550 U.S. at 555,

127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955); see also Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc., 712 F.3d 705, 717 (2d Cir. 2013)(accord). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678, 129 S. Ct. 1937; see also In re Amaranth Natural Gas Commodities Litigation, 730 F.3d 170, 180 (2d Cir. 2013).

1. Section 1983

Section 1983 of Tile 42 of the United States Code provides, in relevant part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." Filarsky v. Delia, — U.S. —, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012). Thus, to state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, --- U.S. ----, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

Although Section 1983 liability may only be imposed upon wrongdoers "who carry a badge

of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it," National Collegiate Athletic Ass'n. v. Tarkanian, 488 U.S. 179, 191, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988)(quotations and citation omitted); see also Hafer v. Melo, 502 U.S. 21, 28, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("Congress enacted §1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." (quotations and citations omitted)), "[a] private actor may be liable under § 1983 * * * if there is a sufficiently close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013)(quotations, internal quotations and citations omitted); see also Fabrikant v. French, 691 F.3d 193, 206-07 (2d Cir. 2012) ("Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action. * * * [T]here must be such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains." (quotations, alterations, emphasis and citations omitted)). "Anyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983." Filarsky, — U.S. —, 132 S. Ct. at 1661 (quotations and citation omitted); see also Fabrikant, 691 F.3d at 207 ("The fundamental question * * * is whether the private entity's challenged actions are 'fairly attributable' to the state." (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982))). "Three main tests have emerged:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state

provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')."

Fabrikant, 691 F.3d at 207 (quoting Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (alteration in original)).

Woodmere, as a private nursing home, and Cassidy, as a court-appointed law guardian for Mr. Casino[4], were not acting "under color of state law" for purposes of Section 1983 with respect to the conduct attributed to them in the complaint. See Parent v. New York, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), aff'd, 485 F. App'x 500 (2d Cir. June 18, 2012), cert. denied, 133 S. Ct. 652, 184 L. Ed. 2d 460 (2012) ("[A]lthough appointed by the state, * * * [a] law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent."); White v. St. Joseph's Hosp., 369 F. App'x 225, 226 (2d Cir. Mar. 10, 2010) (summary order) ("[P]rivate actors and institutions, such as the * * * nursing home * * * are generally not proper Section 1983 defendants because they do not act under color of state law. * * * [T]he presence of state funding or regulation, in the absence of some concerted action with state officials, does not transform a private party's actions into state action."); Baum v. Northern Dutchess Hosp., 764 F. Supp. 2d 410, 430-33 (N.D.N.Y. 2011) (dismissing Section 1983 claims against private nursing home because it is not a state actor); Mitchell v. Home, 377 F. Supp. 2d 361, 370 (S.D.N.Y. 2005) (accord); Arena v. Dep't of Social Svcs. of Nassau County, 216 F. Supp. 2d 146, 155 (E.D.N.Y. 2002) (dismissing Section 1983 claims against law guardian because he was not a

---

[4] Cassidy is Mr. Casino's court-appointed Temporary Personal Needs Guardian pursuant to Article 81 of the Mental Hygiene Law. (Casino v. Fielding, et al., No. 13-CV-5095, Compl. at 14, Sept. 11, 2013, ECF No. 1).

state actor); Elmasri v. England, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) ("[G]uardians *ad litem*, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of Section 1983.") Accordingly, plaintiff's Section 1983 claims against Woodmere and Cassidy are *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) for failure to state a claim for relief.

### 2. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." Although, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (quotations and citation omitted); see also Grullon v. City of New Haven, 720 F.3d 133, 139-40 (2d Cir. 2013) (accord), leave to amend is not required where a proposed amendment would be futile. See Grullon, 720 F.3d at 140; Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012), cert. denied by Curtis Circulation Co. v. Anderson News, L.L.C., 133 S. Ct. 846, 184 L. Ed. 2d 655 (2013). "[A] complaint amendment would be futile only if the amended complaint would not contain enough allegations of fact to state a claim for relief that is plausible on its face." MetLife Investors USA Ins. Co. v. Zeidman, 734 F. Supp. 2d 304, 311 (E.D.N.Y. 2010), aff'd, 442 Fed. Appx. 589 (2d Cir. Sept. 19, 2011) (quotations and citation omitted); see also Salomon v. Adderley Industries, Inc., 960 F. Supp. 2d 502, 508 (S.D.N.Y. 2013); Annunziato v. Collecto, Inc., 293 F.R.D. 329, 333 (E.D.N.Y. 2013). Leave to amend may also properly be denied for: "'undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, [and] undue prejudice to the opposing party by virtue of allowance of the amendment * * *.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Since, *inter alia*, even a liberal reading of the complaint does not give any indication that plaintiff can state a plausible federal claim against Cassidy or Woodmere, and this is plaintiff's third unsuccessful attempt to litigate essentially the same claims, any amendment to the complaint to re-plead the Section 1983 claims against those defendants would be futile. Accordingly, plaintiff's Section 1983 claims against Cassidy and Woodmere are dismissed with prejudice.

### C. Supplemental Jurisdiction

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). See Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 129 S. Ct. 1862, 1866-1867, 173 L. Ed. 2d 843 (2009) (holding that a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); Pension Benefit, 712 F.3d at 726 ("It is a truism of federal civil procedure that in providing that a district court 'may' decline to exercise [supplemental] jurisdiction, § 1367(c) is permissive rather than mandatory." (quotations, brackets and citation omitted)). The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over the pendent state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350,

n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); see also Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 117-18 (2d Cir. 2013) (accord). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. See Cohill, 484 U.S. at 350 n. 7, 108 S. Ct. 614; Lundy, 711 F.3d at 118 ("Once all federal claims have been dismissed, the balance of factors will usually point toward a declination."); Brzak v. United Nations, 597 F.3d 107, 113-14 (2d Cir. 2010) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well.")

In light of the dismissal of all federal claims in this action prior to service of summonses and the complaint upon defendants, and upon consideration of all relevant factors, i.e., judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over any remaining state law claims in this action. Accordingly, to the extent the complaint asserts any state law claims, those claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff is advised that pursuant to 28 U.S.C. § 1367(d), the statute of limitations for any state law claims, to the extent those claims were timely filed in this Court, is tolled for a period of **thirty (30) days after the date of this order**, unless a longer tolling period is otherwise provided under state law.

D. Filing Injunction

Under the All Writs Act, district courts are empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All-Writs Act grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." MLE Realty Assocs. v. Handler, 192

F.3d 259, 261 (2d Cir. 1999); see also Matter of Hartford Textile Corp., 613 F.2d 388, 390 (2d Cir. 1979) (holding that the All Writs Act "grant[s] the district court power sua sponte to enjoin further filings in support of frivolous and vexatious claims.") "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) (quotations and citation omitted); see also Hong Mai Sa v. Doe, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." (quotations and citation omitted)); Safir v. United States Lines Inc., 792 F.2d 19, 24 (2d Cir. 1986) ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation." (quoting Abdullah v. Gatto, 773 F.2d 487, 488 (2d Cir. 1985) (per curiam)).

"The filing of repetitive and frivolous suits constitutes the type of abuse [of the judicial process] for which an injunction forbidding further litigation may be an appropriate sanction." Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996); see also Lau, 229 F.3d at 123 ("The issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." (quotations, alterations and citations omitted)). The following factors should be considered in determining whether to restrict a litigant's future access to the courts:

> "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3)

>whether the litigant is represented by counsel; (4) whether the litigation has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties."

Safir, 792 F.2d at 24; see also Iwachiw v. New York State Department of Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005) (accord). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." Safir, 792 F.2d at 24.

The court must first provide a litigant with notice and an opportunity to be heard before imposing a filing injunction, see Lau, 229 F.3d at 123; Moates v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (*per curiam*), and the filing injunction must be narrowly tailored so as to preserve the litigant's right of access to the court, see Board of Managers of 2900 Ocean Avenue Condominium v. Bronkovic, 83 F.3d 44, 45 (2d Cir. 1996) (holding that filing injunctions "must be appropriately narrow."); e.g. SBC 2010-1, LLC v. Morton, — F. App'x —, 2013 WL 6642410, * 2 (2d Cir. Dec. 18, 2013) (summary order) (affirming the district court's issuance of a filing injunction on the basis, *inter alia*, that it was "narrowly crafted"); Malcolm v. Board of Education of Honeoye Falls-Lima Central School District, 506 F. App'x 65, 70 (2d Cir. Dec. 26, 2012) (summary order) (accord).

This lawsuit is plaintiff's third unsuccessful attempt in this Court to litigate essentially the same claims regarding the treatment and care of Mr. Casino since September 2013. Given the court's "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel," Lau, 229 F.3d at 123, **plaintiff is warned that similar, future actions will not be tolerated**. If plaintiff persists in filing

actions asserting claims previously asserted and dismissed by this Court with prejudice or for lack of subject matter jurisdiction, the Court **will issue an order to show cause why she should not be required to seek leave of this Court before filing any future actions in this Court**.

Finally, plaintiff is cautioned that Federal Rule of Civil Procedure 11 applies to *pro se* litigants, see Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and *pro se* litigants * * *."); e.g. Ginther v. Provident Life and Cas. Ins. Co., 350 F. App'x 494, 496 (2d Cir. 2009) (affirming a district court's imposition of Rule 11 sanctions against a *pro se* litigant), and that should she file another frivolous action, it is within the Court's authority to consider imposing sanctions upon her. See Fed. R. Civ. P. 11.

IV. Conclusion

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted; plaintiff's claims against Stony Brook and the State Court are *sua sponte* dismissed in their entirety pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction; plaintiff's Section 1983 claims against Woodmere and Cassidy are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief; and any state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). **Plaintiff is warned that her repetitive filing of actions in this Court asserting similar claims relating to the care and treatment of Mr. Donato will not be tolerated**. If plaintiff persists in filing actions asserting claims previously asserted and dismissed by this Court with prejudice or for lack of subject matter jurisdiction, the Court: (1) **will issue an order to show cause why she should not be required to seek leave of this Court before filing any future**

-18-

**actions in this Court relating to the care and treatment of Mr. Donato**; and (2) will consider imposing sanctions upon her pursuant to Rule 11 of the Federal Rules of Civil Procedure.

The Clerk of the Court shall close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this Order upon all parties.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: April 10, 2014
Central Islip, New York